IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 35774

| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 557 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 22, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOHN THOMAS RAINEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction and unified life sentence, with a minimum period of confinement of twenty-five years, for sexual battery of a minor child sixteen or seventeen years of age, affirmed.

Molly J. Huskey, State Appellate Public Defender; Sara B. Thomas, Chief, Appellate Unit, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Judge Pro Tem

John Thomas Rainey appeals from his judgment of conviction and unified sentence of life imprisonment, with a minimum period of confinement of twenty-five years, for sexual battery of a minor child sixteen or seventeen years of age. For the reasons set forth below we affirm.

## I.

## FACTS AND PROCEDURE

On June 22, 2007, while staying at her mother's home, sixteen-year-old J.G. awoke to find a man in her bed. The man told her to lie down and be quiet. He then proceeded to forcibly engage in various sexual acts with her. J.G. believed that her mother's boyfriend, Rainey, was her attacker. After the attack, J.G. heard Rainey leave the bathroom and go to the couch. J.G.

1

ran to her mother's bedroom and reported that Rainey had intercourse with her. Her mother, Rose Marie Gloria, did not believe J.G.'s account. When confronted by Gloria, Rainey denied the allegations. Gloria then called the police, but allowed Rainey to flee the home and instructed J.G. on what to tell the police. Upon arrival, the police investigator was told that Rainey had not been in the home at the time of the attack.

Throughout the investigation, Rainey and Gloria told the police that Rainey had been at his mother's home on the night J.G. was raped. They provided the police with a number of names of potential suspects for the attack. Following up on these false leads, the police interviewed and obtained DNA samples from multiple suspects. However, months later the police learned that the DNA taken from J.G. matched the sample provided by Rainey. When confronted, Rainey denied raping J.G. and claimed that his semen was found in J.G. as a result of his sleepwalking. J.G. was re-interviewed and admitted that she had withheld information from the police. She explained her mother instructed her on what to say, even though J.G. always suspected that Rainey was her attacker. J.G. told the police that she did what she was told so that she would not get in trouble.

The state charged Rainey with rape. I.C. § 18-6101. Rainey subsequently entered an *Alford*[1] plea to an amended charge of sexual battery of a minor child sixteen or seventeen years of age. I.C. § 18-1508A(1)(a). Rainey continued to assert that he had no recollection of the night of the attack because he was sleepwalking. At the sentencing hearing, the district court articulated its concern, among other factors, that Rainey had maintained contact with Gloria through a third-party intermediary, in violation of a no-contact order. The district court sentenced Rainey to a unified term of life imprisonment, with a minimum period of confinement of twenty-five years. Rainey appeals.

## II.

## ANALYSIS

### A. No-Contact Order Violation

Rainey first asserts that the district court denied him due process and abused its sentencing discretion when it found that Rainey had violated a no-contact order with Gloria

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

because the record does not contain such an order. Rainey further claims that he was not given notice or an opportunity to be heard in relation to any perceived violation of a no-contact order. A sentencing court has broad discretion in determining what evidence is to be considered at a sentencing hearing. *State v. Johnson,* 101 Idaho 581, 618 P.2d 759 (1980). However, a defendant is denied due process when the sentencing judge relies upon information that is materially untrue or when a judge makes a materially false assumption of fact. *State v. Dunn,* 134 Idaho 165, 997 P.2d 626 (Ct. App. 2000); *State v. Gawron,* 124 Idaho 625, 862 P.2d 317 (Ct. App. 1993).

In *Gawron*, the defendant asserted a violation of his due process rights because the sentencing court believed he had seven prior felony convictions when he had only six. This Court determined that the exact number of felonies was not material to the district court's decision and therefore no reversal or remand was necessary. *Gawron*, 124 Idaho at 628, 862 P.2d at 320. We stated,

> Black's Law Dictionary defines "material" as Important; more or less necessary; having influence or effect; going to the merits; having to do with matter, as distinguished from form. Representation relating to matter which is so substantial and important as to influence party to whom made is "material." Black's Law Dictionary 976 (6th ed. 1990). Under this definition, we cannot say that the district court's mistake as to the number of felonies was "material."

*Id*.

At the sentencing hearing, the district court articulated many serious concerns with Rainey's history and character which warranted a more severe penalty in this case. Among those concerns, the district court found that Rainey's ongoing relationship and communication with Gloria was troubling. The district court observed:

> The other interesting thing is your attorney said that one of the things that I should take into account as a mitigator is you want to avoid your past associations because you know they got you in trouble. One of the biggest past associations that you have is Miss Rose Gloria, the mother of the victim. And yet according to the psychological evaluation at page seven, you indicate to [the evaluator] that--and I will read to you what it says. He indicated he has been dating a woman for approximately six years and described the relationship as great. A little strained because of what happened. It should be noted his girlfriend was the co-defendant.
> Then this is the other part that I thought was interesting. You indicated that you and Miss Rose Gloria continue to have contact approximately one time

per week while incarcerated and explained that this occurs by using your mother as a middle person. Now, that was as of 8/21/08.

The district court reviewed Rainey's actions with Gloria to mislead the police during their investigation into the assault. This was followed by further discussion of Rainey's psychological evaluation and the presentence investigation report (PSI). The district court found:

> Also, the other thing is that you indicated in the presentence report that while incarcerated in some of the places that you had had disciplinary problems while incarcerated. And the fact that even though there was a no contact, you were told that you and [Gloria] were to have no contact, there was this--this going around the no-contact order and involving again your mother to violate this no contact. . . .
> . . . .
> In coming to the conclusion that in this case I'm going to follow the State's recommendation, I have considered a number of aggravating factors. One, the fact that you involved others and attempted to point blame. The fact that you---this was a violent act. This was not in any way consensual. The fact that you lied repeatedly throughout this investigation. The fact that you have continued to have contact with Miss Gloria throughout the entire time that you have been incarcerated. And the fact that the psychological evaluation suggests that you are a high risk to commit future criminal acts. And finally the fact that under--you have been on probation a number of times. It appears to the Court that in almost every instance you have violated that probation repeatedly. So that tells me that a significant incarceration is appropriate.

Upon review of the instant case, we cannot conclude that the district court's misstatement concerning the existence of a no-contact order between Rainey and Gloria was material to the exercise of its sentencing discretion. Rainey has failed to show that any reliance on the existence of the order was material to the ultimate reasoning for the sentence imposed. Rather, the district court expressed greater concern with Rainey's ongoing association with Gloria despite their past criminal conspiracy to hinder the police investigation. The district court commented on their relationship at length, but made only one brief reference to the existence of a no-contact order as part of the equation. Therefore, Rainey's due process rights were not violated because the district court's reliance on this misinformation was not material.

Rainey further argues that he was not afforded adequate notice and an opportunity to be heard on the issue of the violation of the no-contact order, if it existed. In our analysis, we have assumed the nonexistence of the no-contact order between Rainey and Gloria. Therefore, we do

4

not address this issue as it relates to the existence of the order. Regarding the district court's use of Rainey's ongoing association with Gloria as an aggravating factor at sentencing, regardless of the existence of a no-contact order, Rainey was provided adequate notice. Throughout the case the district court expressed its disapproval of this behavior and the utilization of Rainey's mother as an intermediary while Rainey and Gloria were both incarcerated. The PSI also discussed Rainey's deviant conduct and his plans to continue his relationship with Gloria despite their criminal history. Accordingly, Rainey's due process rights were not violated because Rainey received adequate notice and an opportunity to be heard concerning his ongoing relationship with Gloria.

## B. Excessive Sentence

Rainey next contends that his unified sentence of life imprisonment, with a minimum term of confinement of twenty-five years, is excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Rainey claims that the district court failed to give adequate consideration to the fact that this was his first felony offense, to his rehabilitative potential, to the absence of other sexual assaults on the victim before and after the night of the attack, to his minor mental health issues, and to his remorse. Rainey's claims are belied by the record. At the sentencing hearing, the district court observed that this was Rainey's first felony offense, but that he had eleven prior

5

misdemeanors as well as some disciplinary problems while previously incarcerated. The district court also discussed the psychological report in detail along with its recommendations and provisional diagnoses, including the record of Rainey's history as a victim of sexual abuse himself. The district court also recognized that the psychological report indicated that Rainey was a high risk to reoffend without treatment, but that he was amenable to treatment in a structured environment. However, the district court also noted that Rainey had not shown remorse for his conduct and had refused to take responsibility for his actions throughout the police investigation and judicial proceedings. He held firm to his improbable story that he committed the sexual assault subconsciously while sleepwalking, despite numerous indications that he was conscious of his actions at the time of the sexual battery. The district court observed that this abdication of responsibility served as a roadblock to any potential rehabilitation and that Rainey would thus remain, at least, a moderate risk to reoffend. Having reviewed the record in this case, we cannot say that the district court abused its discretion.

### III.

### CONCLUSION

The district court's reliance on the erroneous existence of a no-contact order between Rainey and Gloria was not material to the exercise of its sentencing discretion. Rainey received adequate notice and an opportunity to be heard concerning the district court's disapproval of his ongoing association with Gloria and the use of that relationship as an aggravating factor at sentencing. Therefore, Rainey's due process rights were not violated. Furthermore, Rainey's sentence is not excessive. Accordingly, Rainey's judgment of conviction and unified sentence of life imprisonment, with a minimum period of confinement of twenty-five years, for sexual battery of a minor child sixteen or seventeen years of age is affirmed.

Chief Judge LANSING and Judge MELANSON, **CONCUR.**

6